UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

GABRIEL I. ADKINS, )
 )
 Plaintiff, ) Civil Action No. 13-CV-17-HRW
 )
V. )
 )
BOYD COUNTY, ET AL., ) **MEMORANDUM OPINION**
 ) **AND ORDER**
 Defendants. )

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Plaintiff Gabriel I. Adkins is an inmate confined in the Todd County Detention Center located in Elkton, Kentucky. Proceeding without an attorney, Adkins has filed a 42 U.S.C. § 1983 civil rights complaint challenging conditions of his confinement in the Boyd County Detention Center ("BCDC") in Catlettsburg, Kentucky. [D. E. No. 1] Adkins alleges that between December 13, 2012, and February 1, 2013, the named defendants[1] subjected him to cruel and unusual punishment in violation of the Eighth Amendment of the U.S.

---

[1] The named defendants are: (1) Joe Burchett, Jailer, BCDC; (2) Carol Cornett, Nurse Practitioner, BCDC; (3) Damon Matthews, Class "D" Supervisor, BCDC; (4) Boyd County, Kentucky; and (5) Pathways Mental Health.

Constitution. By prior Order [D. E. No. 4], the Court has granted Adkins's motion to proceed *in forma pauperis*.

The Court must conduct a preliminary review of Adkins' complaint because he has been granted pauper status and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

The Court evaluates Adkins' complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts Adkins's factual allegations as true, and liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Having reviewed the complaint, however, the Court must dismiss it with prejudice because Adkins had failed to state a claim upon which relief can be granted.

## ALLEGATIONS OF THE COMPLAINT

The following is a summary of Adkins' factual allegations. After being moved from Cell #137 to the "D" Block of the BCDC, Adkins smeared his face

with his own feces "like 'war paint,'" D.E. No. 1, p. 2, and covered the walls of the "D" Block cell with his feces. Adkins blames his behavior on the fact that he had been in the BCDC for two weeks without "proper medication." [*Id.*] Adkins alleges that Damon Matthews then used pepper-spray on him without justification, and that he was kept in a separate area of the BCDC until he could talk to someone at Pathways, Inc.[2] [*Id.*] The next day, after talking to someone at Pathways, Inc., Adkins was left on "moderate watch," but was not released to return to the "D" Block. [*Id.*, pp. 2-3] Adkins alleges that Pathways, Inc., failed to keep him on "high risk" status and to properly medicate him. [*Id.*, p. 3]

Adkins alleges that after he was returned to the "D" Block, he was "mentally in an uproar over my son having a terminal illness," and that BCDC Nurse Practitioner Carol Cornett failed to discuss his psychiatric medication with him prior to adjusting that medication. [*Id.*, p. 3] Adkins further alleges that Cornett failed to provide him with proper medical treatment for an abscessed tooth and failed to properly treat a condition which he described as either the flu or a bad

---

[2]

Pathways, Inc., serves as a community-based center in eastern Kentucky which provides mental health care, the prevention and treatment of alcohol and other addictions, and services for individuals with mental retardation or developmental disabilities. *See* http://www.pathways-ky.org/services.html . The Clerk of the Court will be instructed to change the name of this defendant on the CM/ECF cover sheet to "Pathways, Inc."

head cold. Finally, Adkins alleges that BCDC Jailer Joe Burchett "has control to over see [sic] all this & find a solution & did nothing." [*Id.*]

Adkins seeks unspecified damages for pain and suffering, an order requiring the defendants to "compensate their job titles,"[3] and an order directing the defendants to "fix the problem so other inmates are provided with proper medical assistance." [*Id.*, p. 8, § VI]

## DISCUSSION

### 1. Alleged Use of Excessive Force by Damon Matthews

Adkins does not use the term "excessive force," but a liberal reading of the complaint suggests that he could be alleging that Matthews applied excessive force when using the pepper-spray on him. The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment," and the use of excessive force against prisoners may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). However, not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) ("[T]he good

---

[3] It is unclear in this passage whether Adkins means he wants the defendants to "compensate" him or to relinquish their "job titles."

4

faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment.") (citations omitted).

An Eighth Amendment claim is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833–36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id.* at 834, (*i.e.*, that the force was "harmful enough" to establish a constitutional violation). The subjective inquiry focuses on whether a defendant possessed a culpable state of mind. In the context of excessive force, the question is one of a defendant's intent-whether a defendant used force in a good faith effort to restore order or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6–7; *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Thus, plaintiff needs to produce evidence that the force was "harmful enough to establish a constitutional violation" and applied "maliciously and sadistically to cause harm" rather than in a "good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7–8.

Excessive force claims must be decided "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). Still, "the extent of injury may suggest whether the use of force could plausibly

have been thought necessary ... [and] provide some indication of the amount of force applied," even though "[i]njury and force ... are only imperfectly correlated." *Id.* at 37–38. A prisoner's complaint "of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citations and internal quotation marks omitted). Here, Adkins does not allege that he suffered any injury after the pepper-spray was used on him, or that he sought or received medical treatment as a result of the alleged use of pepper-spray.

To the extent that Adkins may have suffered emotional distress stemming from Matthews' alleged use of pepper-spray on him, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) ("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-confinement case"); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005). Because Adkins has not shown a "sufficiently serious" deprivation, he

6

has satisfied the objective criteria of his construed Eighth Amendment excessive force claim against Damon Matthews.

The next step of an excessive force claim requires a court to inquire into "the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted" and the inquiry "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing." *Parrish*, 800 F.2d at 605.

Applying that analysis here, Adkins states that he had smeared himself and the walls of his cell with feces, exposure to which could have subjected Adkins, other inmates, and/or jail personnel to contamination and disease spread by feces, and other serious threats to human health. Adkins further claims that he engaged in such abnormal and dangerous behavior because he had gone for two weeks without "proper medication," which suggests that Adkins may have been violent, or at a minimum, that he was not amenable to being restrained by less intrusive means. Assuming that Matthews did in fact use pepper-spray on Adkins, this Court will not second guess Damon Matthews' actions, because under the scant facts which Adkins has alleged, Matthews took that action as a good-faith effort

7

to maintain and/or restore discipline, and to eliminate the possibility of further health threats, not to sadistically cause harm to Adkins. *See Hudson*, 503 U.S. at 7-8; *Whitley*, 475 U.S. at 320. Thus, because Adkins has also failed to satisfy the subjective element of his construed excessive force claim against Matthews, Adkins' Eighth Amendment claims against Damon Matthews will be dismissed for failure to state a claim upon which relief can be granted.

### 2. Alleged Deliberate Indifference to Serious Medical Needs

Deliberate indifference to an inmate's serious medical needs may amount to cruel and unusual punishment prohibited by the Eighth Amendment. *See Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Deliberate indifference entails something more than mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Similar to an Eighth Amendment excessive force claim, a plaintiff who alleges that a defendant was deliberately indifferent to his serious medical needs must also satisfy both objective and subjective components of his claim.

To satisfy the objective component, the plaintiff must show that he had a sufficiently serious condition and that the denial of needed medical care of that condition either resulted in the unnecessary and wanton infliction of pain or posed a substantial risk of serious harm. *See Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir.

8

2013); *Flanory*, 604 F.3d at 253. To satisfy the subjective component, a plaintiff must allege and ultimately prove that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk. *Farmer*, 511 US. at 837; *Quigley*, 707 F.3d at 681–82.

Adkins claims that Nurse Practitioner Cornett and Pathways, Inc., were deliberately indifferent to his serious psychiatric needs. However, based on the meager facts Adkins has alleged, Adkins has instead described merely a dispute between him and both Cornett and Pathways, Inc., as to the nature and extent of his psychiatric treatment. Adkins does *not* allege that Cornett ignored his psychiatric needs, only that she failed to adjust his psychiatric medication "properly," and that she failed to consult with him prior to adjusting his medication.[4] [D.E. No. 1, p. 3] Similarly, Adkins does *not* allege that Pathways,

---

[4]
In a prior passage of his complaint, Adkins alleged that he smeared feces over his face and cell walls "after 2 weeks without my proper medication," *id*, p. 2, but he did not identify the person or persons responsible for denying him his "proper medication" during that preceding two-week period. Adkins did *not* allege that either Nurse Practitioner Cornett or Pathways, Inc., denied him his "proper medication" during the two-week period preceding his feces-smearing activity. Adkins asserted other specific allegations against both defendants, but he did not directly or indirectly link either of them to the alleged denial of "proper medication" prior to the day on which he smeared feces on himself and over the walls of the "D" block cell. The sequence of Adkins' allegations indicates that his medical complaints about Cornett and Pathways, Inc., arose after he had smeared

Inc., ignored his mental condition; he instead alleges only that after the mental health specialists there examined him following the feces incident, they did not keep him on "high risk status" and did not keep him "properly medicated." [*Id.*]

Here, Adkins describes differences of opinion he had with Cornett and Pathways, Inc., about his psychiatric treatment, but mere differences in opinion between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Jennings v. Al–Dabagh*, 97 F. App'x. 548, 550 (6th Cir. 2004) ("Jennings's personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to Jennings's serious medical needs."); *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) ("The Plaintiff's complaints go to the adequacy of the medical care; they do not raise an issue of unnecessary and wanton infliction of pain as required under Estelle."); *Dotson v. Wilkinson*, 477 F. Supp.2d 838, 848 (N.D. Ohio 2007). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.

---

feces on his face and over the walls of the "D" block cell.

*Gabehart v. Chapleau*, 110 F.3d 63, 1997 WL 160322, at *2 (6th Cir. 1997); *Henricks v. Pickaway Correctional Inst.*, No. 2:08-CV-580, 2009 WL 1322306, at *5 (S.D. Ohio May 11, 2009) (where medical provider incompetently evaluated a risk and made an incorrect diagnosis which may could have cost the prisoner his life, the provider committed medical malpractice, not deliberate indifference).

Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6 Cir.1976). "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. *Farmer*, 511 U.S. at 835–36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*); *Westlake*, 537 F.2d 60–61 n. 5. Adkins' claims alleging the denial of proper psychiatric care might be sufficient for a medical malpractice claim in state court, and Adkins may pursue such claims in state court, but the meager facts alleged in his complaint do not support his allegation that Cornett and/or Pathways, Inc, were deliberately indifferent to his psychiatric needs under the Eighth Amendment.

11

Next, Adkins claims that Cornett failed to provide him with medical treatment for his tooth, which he subjectively believed to be abscessed. Adkins has failed to present evidence that his alleged tooth problem was sufficiently serious to meet the objective component of an Eighth Amendment claim. Adkins did not allege that he was denied treatment for the tooth for an extended period of time, or that he suffered pain or any other harm resulting from his dental condition.

Other courts have held that prisoners' complaints about an abscessed tooth or similar dental matters do not rise to the level of a "sufficiently serious" condition which would satisfy the objective component of an Eighth Amendment medical claim. *See Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (affirming dismissal of prisoner's Eighth Amendment claim on initial screening, where prisoner failed to show that his tooth condition presented a serious medical problem); *Berryman v. Epp*, 73 F.3d 361, 1995 WL 739493 (Table) (6th Cir. Dec. 12, 1995) (Berryman's claim that he endured swelling in his left face and severe tooth pain for a period of approximately two months, without alleging and supporting more, is not a serious enough condition for an Eighth Amendment violation."); *Stanfield v. Thompson*, No. 4:12CV–P54–M, 2013 WL 899423, at *9 (W. D. Ky. March 8, 2013) (finding no serious condition based on prisoner's

12

complaints about an abscessed tooth); *cf. McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (a seven-month delay in extracting teeth and filling others may violate the Eighth Amendment when the prisoner is complaining of serious pain during the entire period).

Finally, Adkins has alleged that Nurse Practitioner Cornett failed to treat his flu and/or head cold complaints, but he does not allege that he suffered any serious or long term adverse consequences stemming from these conditions. Even accepting as true Adkins' allegation that Cornett failed to treat his head cold and/or flu-like symptoms, the Court is unable to conclude that such conditions--absent additional facts alleging serious complications or long term physical damage--qualify as serious conditions which would satisfy the objective criteria of an Eighth Amendment claim. In the employment context, neither the common cold nor the flu qualify as condition serious enough to warrant leave under the Family Medical Leave Act ("FMLA"). *See Gutierrez v. 78th Judicial Dist. Court*, No. 1:07-CV--1268 2009 WL 2584748, at *15 (W.D. Mich. Aug. 18, 2009) (citing 29 C.F.R. § 825.114(c), which excludes the common cold, the flu, ear aches, upset stomach and other minor conditions from the FMLA's coverage). No valid justification exists for reaching a different result in the jail or prison context.

13

Adkins' Eighth Amendment claims against BCDC Nurse Practitioner Carol Cornett and Pathways, Inc., fail to state a claim upon which relief can be granted.

### 3. Supervisory Liability of Jailer Joe Burchett

Adkins alleges that BCDC Jailer Joe Burchett is liable to him because Burchett was responsible for overseeing the actions of his subordinates (Matthews and Cornett) and finding a "solution," but that Burchett did "nothing." Adkins is therefore alleging that Burchett is liable for the actions of his subordinates solely because of his supervisory position, *i.e.*, that Burchett is liable to him for the actions of his employees based on the doctrine of *respondeat superior*. However, Adkins can not hold Burchett liable based solely on his supervisory authority, because the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute constitutional liability onto supervisors. *Monell v. Dept. of Social Service of City of New York*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff

14

must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872–74 (6th Cir. 1982)).

Here, Adkins does not allege that Burchett was directly or personally involved in *any* of the complained-of actions, or that Burchett implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of other defendants. Adkins contends that Burchett is liable under the Eighth Amendment solely because he was the head administrator of the BCDC, but Burchett's supervisory position alone is insufficient to hold him liable for the alleged actions of his subordinates. "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

Further, supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199,

15

206 (6th Cir. 1998)). Adkins' Eighth Amendment claims against Joe Burchett will be dismissed for failure to state a claim upon which relief can be granted.

### 4. Claims Against Boyd County

To the extent that Adkins asserts § 1983 claims against Boyd County, he essentially asserts claims against that entity's governing body, presumably the Boyd County Fiscal Court. A municipality ... cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2005) (citing *Monell v. New York City Dep't. of Soc. Servs.* 436 U.S. 658, 694 (1978)). To state a claim for relief against the Boyd County Fiscal Court, Adkins must allege that the alleged action was the result of an unconstitutional policy of, or a custom followed by, the Boyd County Fiscal Court. *Monell*, 436 U.S. at 694; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996); *see also Polk County v. Dodson*, 454 U.S. 312 (1981) (municipal policy must be a "moving force" behind constitutional deprivation).

Municipalities and other governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691; *Deaton v.*

16

*Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). A plaintiff must cite specific facts in support of his claim, and conclusory allegations are insufficient. *Culberston v. Doan*, 125 F.Supp.2d 252, 263-64 (S.D. Ohio 2000). A municipality may not be held liable for the actions of employees solely on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694.

Here, Adkins does not allege that any of the BCDC officials acted pursuant to any policy or custom of the Boyd County Fiscal Court or other governing body of Boyd County. In fact, Adkins does not even mention Boyd County other than to list it as a defendant in the caption of his complaint. Adkins's Eighth Amendment claims against Boyd County and/or its governing body fail to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. The Clerk of the Court shall change on the CM/ECF cover sheet the name of Defendant "Pathways Mental Health" to "Pathways, Inc."

2. Plaintiff Gabriel I. Adkins's complaint [D. E. No. 1] alleging excessive force and deliberate indifference to his serious medical needs is **DISMISSED WITH PREJUDICE**.

3. The Court shall enter an appropriate judgment.

4. This matter is **STRICKEN** from the active docket.

This September 27, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge